NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

_____
                                    :
GABRIEL ACOSTA et al.,              :
                                    :
         Plaintiffs,                :
                                    :   Civ. No. 04-3885 (JAP)
         v.                         :
                                    :
                                    :   **OPINION**
PACE LOCAL I-300 HEALTH FUND et al.,:
                                    :
         Defendants.                :
_____ :

APPEARANCES:

Paul A. Friedman
Epstein Becker & Green, P.C.
Two Gateway Center, 12th Floor
Newark, NJ 07102
    *Attorney for Third Party Plaintiffs, Alan Funk and Matthew DiMinno*

Margaret Lambe Jurow
Podvey, Meanor, Catenacci, Hildner, Cocoziello & Chattman
The Legal Center
One Riverfront Plaza
Newark, NJ 07102
    *Attorney for Third Party Defendants, Kroll, Heineman & Giblin and Gary Carlson*

Richard C. Wischusen
Reilly, Supple & Wischusen, LLC
Murray Hill Officenter
571 Central Avenue
New Providence, NJ 07974
    *Attorney for Third Party Defendant Lynch Martin*

PISANO, District Judge.

Third-Party Plaintiffs Matthew DiMinno ("DiMinno") and Alan Funk ("Funk") (together "Third-Party Plaintiffs" or "DiMinno and Funk") brought a Third-Party Complaint[1] against Gary A. Carlson ("Carlson"), the law firm of Kroll Heineman & Giblin ("Kroll"), and the law firm of Lynch Martin ("Lynch Martin") (together "Defendants") alleging that Defendants committed legal malpractice and breached fiduciary duties pursuant to the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 et seq. ("ERISA") arising out of Carlson's representation of Third-Party Plaintiffs and the Pace Local I-300 Health Fund (the "Fund"). Currently before the Court is Lynch Martin's Motion to Dismiss Third-Party Complaint of Funk and DiMinno and a Motion to Dismiss the Third-Party Complaint of Funk and DiMinno for Failure to Timely File an Affidavit of Merit on behalf of Carlson and Kroll. For the reasons stated below, the Court grants Defendants' motions to dismiss in their entirety and dismisses the Third-Party Complaint with prejudice.

**I. BACKGROUND**

This action relates to the alleged failure of the Fund to pay health benefits for its members. The Fund is a multi-employer health fund within the meaning of 29 U.S.C. § 1002(37)(A) and plan sponsor within the meaning of 29 U.S.C. § 1002(16)(B). The Fund was managed and supervised by several individuals, including, *inter alia*: Clarice St. Luce, former President/Business Manager and former Union Trustee of the Fund; Gregory St. Luce, former

---

[1] DiMinno and Funk each filed a Third-Party Complaint. (*See* Dkt. #64, #65.) The claims alleged in those complaints, however, are identical. For the sake of simplicity, the Court will use the singular "Third-Party Complaint" to refer to both. Citations to paragraphs from the "Third-Party Complaint" will correspond to paragraph numbers from DiMinno's Answer, Cross-Claims and Third-Party Complaint. (*See* Dkt. #64.)

Fund Administrator (together the "St. Luces"); DiMinno, Union Trustee; and Funk, Employer Trustee. Amerihealth Administrators, Inc. ("Amerihealth") served as the third-party administrator for the Fund from August 1, 2000 until September 1, 2003, at which time Healthchoice, Inc. became the third-party administrator. Carlson, an attorney with Lynch Martin until July 2004 when he and several other attorneys left to form the Kroll law firm, was legal counsel to the Fund.

On or about September 1, 2001, President Container, Inc. ("President Container") joined the Fund on behalf of its union and non-union employees. Initially, the Fund was a fully-insured multi-employer health plan. In or about August 2000, however, the Fund transitioned to a self-insured plan. At least as early as 2002, the Fund began to suffer from financial problems resulting in the failure to pay employees' claims. In mid-August 2002, Amerihealth notified the Fund that the amount of delinquent funding totaled over $600,000, a figure that grew to nearly $1 million by December of that year. In July 2003, Amerihealth informed Gregory St. Luce that the delinquent amount had increased to $1.3 million. On June 11, 2004, the Fund's accountants issued an Independent Auditor's Report for fiscal years 2001, 2002, and 2003 that questioned the ability of Pace International Union Local I-300 ("Local I-300") and the Fund to continue as a going concern due to continuing Fund deficits. Despite these problems, as of August 1, 2004, all self-insured participants were once again enrolled in a fully-insured plan.

On August 12, 2004, President Container and certain of its employees (the "President Container Plaintiffs") filed a complaint (the "President Container Complaint")[2] against, *inter*

---

[2] The Court notes that Accurate Box Company, Inc. and Universal Folding Box Company, Inc. also joined the Fund on behalf of their respective employees. Both companies and their employees assert claims in the President Container Complaint. For the purposes of this

3

*alia*, the Fund, Pace International Union ("Pace International"), Local I-300, the St. Luces, DiMinno, Funk, and Amerihealth alleging violations of ERISA, including failure to pay employees' health benefits and breach of fiduciary duty. On September 15, 2004, Carlson, as a member of the Kroll firm, filed an answer (the "September 2004 Answer") to the President Container Complaint on behalf of, *inter alia*, the Fund, Local I-300, the St. Luces, DiMinno, and Funk. Along with the September 2004 Answer, Carlson filed a counterclaim on behalf of these defendants against the President Container Plaintiffs for unpaid premiums and a cross-claim against Amerihealth for failure to process claims in a timely manner and failure to advise how much money was needed to finance the Fund.

    In February 2005, Pace International performed an audit of Local I-300 and imposed a Trusteeship over the Fund. The two remaining trustees for the Fund are Luke Gordon ("Gordon"), whom Pace International installed as a union representative trustee, and Funk. On August 1, 2005, the President Container Plaintiffs filed a First Amended and Supplemental Class Action Complaint ("Amended President Container Complaint") to which DiMinno and Funk, through new counsel, filed an answer on or about November 8, 2005. In addition to the answer, DiMinno and Funk filed a Third-Party Complaint against Carlson, Kroll and Lynch Martin, alleging legal malpractice and breach of fiduciary duty on grounds that Defendants failed to disclose to the trustees that the Fund and Local I-300 had participated in prohibited transactions with one another. The allegedly prohibited transactions involve the Fund's administrative expenses, shared rental expenses, and the salaries and perks received by the St. Luces. Third-

---

Opinion, however, it is not necessary to include a detailed discussion of their claims or the factual background of their participation in the Fund.

Party Plaintiffs allege that the failure of the law firms and Carlson to advise them of the alleged prohibited transactions may expose them to liability to the Fund exceeding $1 million.

Additionally, they allege that Carlson and Kroll prepared and filed the September 2004 Answer without consulting or advising them of their rights, and that doing so resulted in damages to them. DiMinno and Funk further assert that, because of the alleged breaches of fiduciary duty and professional obligations, and legal malpractice on the part of Carlson, Kroll and Lynch Martin, they are entitled to indemnification. Third-Party Plaintiffs demand judgment for compensatory damages, interest, attorney's fees, costs, and disbursements. On March 6, 2006, Carlson and Kroll filed an answer (the "March 6, 2006 Answer") to the Third-Party Complaint; Lynch Martin filed its answer on May 11, 2006 (the "May 11, 2006 Answer"). On September 7, 2006, DiMinno and Funk filed an Affidavit of Merit in support of their legal malpractice claims against Kroll, Carlson, and Lynch Martin.

On January 13, 2006, Gordon filed a Complaint-in-Intervention which, in relevant part, alleges that the St. Luces, DiMinno, Funk, and Local I-300 caused or permitted hundreds of thousands of dollars of Fund assets to be diverted to Local I-300. The Complaint-in-Intervention also included a claim that Kroll, as counsel to the Fund, knew or should have known that the St. Luces breached their fiduciary duties to the Fund and that Kroll participated in Prohibited Transactions by accepting Fund monies as legal fees after the commencement of the instant litigation and a related Department of Labor investigation. Despite these allegations, Gordon later voluntarily dismissed his single claim against Kroll. Notably, the Complaint-in-Intervention does not assert any claims against Carlson or Lynch Martin.

On March 29, 2006, DiMinno and Funk filed answers to the Complaint-in-Intervention

5

and asserted cross-claims—identical to the claims set forth in the Third-Party Complaint—against Carlson, Kroll, and Lynch Martin. Defendants did not respond to those cross-claims. Discovery on the claims set forth in the Third-Party Complaint has been underway since early 2006. Defendants now move for dismissal of all claims in the Third-Party Complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted.

## II. DISCUSSION

### A. Standard of Review under Federal Rule of Civil Procedure 12(b)(6)

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint may be dismissed for failure to state a claim upon which relief can be granted. When deciding a motion to dismiss, the Court must accept as true all allegations in the complaint and must provide the plaintiff with the benefit of all inferences that may be fairly drawn from the complaint. *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). Thus, a pleading should be dismissed only if the allegations in the complaint, "even if true, fail to support the claim." *Ransom v. Marrazzo*, 848 F.2d 398, 401 (3d Cir. 1988). There is no requirement, however, that the Court credit a party's "bald assertions" or "legal conclusions." *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1429 (3d Cir. 1997).

### B. Legal Malpractice Claims

Third-Party Plaintiffs allege two distinct claims for legal malpractice: (1) that Carlson, while a member of Kroll, committed malpractice in connection with his work on the September 2004 Answer to the President Container Complaint; and (2) that Carlson, during his employment with Kroll and Lynch Martin, failed to disclose his knowledge of prohibited transactions between

6

the Fund and Local I-300. Defendants move to dismiss these claims for failure to comply with New Jersey's Affidavit of Merit Statute. Alternatively, Defendants contend that the claims fail because, to the extent that Third-Party Plaintiffs suffered any harm, Defendants' alleged conduct is not the proximate cause of that harm.

### 1. Affidavit of Merit Requirement

New Jersey law requires that a plaintiff asserting a malpractice claim must provide an Affidavit of Merit within 60 days, or 120 days upon a showing of good cause, of the date that the defendant files an answer. *See Snyder v. Pascack Valley Hospital*, 303 F.3d 271, 272-73 (3d Cir. 2002). "Designed to weed out frivolous lawsuits at an early stage," *see Galik v. Clara Maass Medical Center*, 167 N.J. 341, 771 A.2d 1141, 1147 (2001), the New Jersey Affidavit of Merit statute states:

> The plaintiff shall, within 60 days following the date of filing of the answer to the complaint by the defendant, provide each defendant with an affidavit of an appropriate licensed person that there exists a reasonable probability that the care, skill or knowledge exercised or exhibited in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional or occupational standards or treatment practices. The court may grant no more than one additional period, not to exceed 60 days, to file the affidavit pursuant to this section, upon a finding of good cause.

N.J. Stat. Ann. 2A:53A-27.

New Jersey courts generally have not adhered to a strict construction of the statute and decisions analyzing the statute have gradually weakened the Affidavit of Merit requirement by recognizing a number of noteworthy exceptions. First, as the statute itself provides, a plaintiff is entitled to a 60-day extension (for a total of 120 days) upon a showing of good cause. A plaintiff may receive this extension even where the plaintiff did not request it within the initial 60-day

period. *Burns v. Belafsky*, 166 N.J. 466, 766 A.2d 1095, 1100-01 (2001). Though there are no bright line rules as to what constitutes good cause, the Supreme Court of New Jersey has established that attorney error or inadvertence could qualify as good cause to give rise to the 60-day extension. *Id.* at 1101 ("Absent demonstrable prejudice, it is neither necessary nor proper to visit the sins of the attorney upon . . . [the] blameless client.") (internal quotations omitted). Second, plaintiffs who fail to file an Affidavit of Merit within the 120-day period can avoid dismissal upon a showing of extraordinary circumstances. *Barreiro v. Morais*, 318 N.J. Super. 461, 723 A.2d 1244, 1249 (App. Div. 1999). Determining whether extraordinary circumstances exist "require[s] a [case-by-case] fact-sensitive analysis." *Id.* (quotation omitted.)

Third, even in the absence of extraordinary circumstances, a plaintiff's substantial compliance with the Affidavit of Merit statute is sufficient to survive a motion to dismiss on grounds that the plaintiff did not strictly comply with the statute. *Galik*, 771 A.2d at 1151.[3] In evaluating whether a plaintiff has satisfied the substantial compliance doctrine, courts must engage in a "fact-sensitive analysis involving the assessment of all of the idiosyncratic details of a case to determine whether reasonable effectuation of the statute's purpose has occurred." *Id.* Establishing the elements of substantial compliance, however, is a "heavy burden." *Id.* at 1152. Fourth, to the extent a claim for professional negligence involves common knowledge, plaintiffs are excused from filing an Affidavit of Merit. *See Hubbard v. Reid*, 168 N.J. 387, 774 A.2d 495,

---

[3] To demonstrate substantial compliance with the Affidavit of Merit statute, a plaintiff must show: "(1) the lack of prejudice to the defending party; (2) a series of steps taken to comply with the statute involved; (3) a general compliance with the purpose of the statute; (4) a reasonable notice of petitioner's claim; and (5) a reasonable explanation why there was not a strict compliance with the statute." *Bernstein v. Bd. of Trs. of the Teachers' Pension and Annuity Fund*, 151 N.J. Super. 71, 376 A.2d 563, 566 (App. Div. 1977).

499-500 (2001). The common knowledge exception applies where the "jurors' common knowledge as lay persons is sufficient to enable them, using ordinary understanding and experience, to determine a defendant's negligence without the benefit of the specialized knowledge of experts." *Estate of Chin v. Saint Barnabas Med. Ctr.*, 160 N.J. 454, 734 A.2d 778, 787 (1999).

These exceptions reflect a policy of preventing defendants from using the statute as a sword to defeat meritorious claims. *See Snyder*, 303 F.3d at 274; *Palanque v. Lambert-Woolley*, 168 N.J. 398, 774 A.2d 501, 505 (2001) (noting that purpose of statute is to "curtail frivolous litigation without preventing access to the courts for meritorious claims."). The statute is not, however, "a toothless tiger"; where appropriate, the New Jersey courts have not hesitated to impose dismissal for failure to comply with the Affidavit of Merit requirement. *Snyder*, 303 F.3d at 274-75 (collecting cases).

### 2. The September 2004 Answer to the President Container Complaint

Third Party Plaintiffs allege that Carlson and Kroll committed legal malpractice by failing to advise them of the August 2004 President Container Complaint, filing the September 2004 Answer on their behalf even though they had not retained the services of Carlson, and failing to consult DiMinno and Funk during the drafting of the answer to advise them of their right, *inter alia*, to assert cross-claims. (*See* Third Party Compl. ¶¶ 195-201.) This particular allegation does not implicate Lynch Martin because Carlson, along with several other attorneys, left the firm to form Kroll in July 2004, two months before Carlson filed the answer.

Carlson and Kroll move to dismiss the malpractice claim against them on the basis that DiMinno and Funk failed to comply with the Affidavit of Merit statute. In their view, the March

6, 2006 Answer started clock on the 120-day period and thus the Affidavit—filed six months later—was untimely. Alternatively, Carlson and Kroll argue that Third-Party Plaintiffs have not pled facts sufficient to state a claim for malpractice, particularly considering that DiMinno and Funk filed an answer to the Amended President Container Complaint, thereby preserving their rights in the underlying suit and foreclosing any claim for damages against Carlson and Kroll.

In response, DiMinno and Funk contend that the time in which to file the Affidavit of Merit never started because Carlson and Kroll did not respond to the cross-claims Third-Party Plaintiffs asserted in their March 29, 2006 Answer to the Complaint-in-Intervention. In their view, therefore, the filing of their Affidavit of Merit on September 7, 2006 was not out of time. DiMinno and Funk further argue that, even if the March 6, 2006 Answer marked the beginning of the period in which to file an Affidavit of Merit, such a filing is not necessary in this case for two alternative reasons: (1) their claims are for indemnification and (2) the common knowledge exception applies.

As an initial matter, the Court finds that the operative pleading for the purposes of the commencement of the Affidavit of Merit period is the March 6, 2006 Answer. Though DiMinno and Funk rely on *Snyder* as support for their argument that an answer to their March 29, 2006 pleadings—not the March 6, 2006 Answer—would have triggered the running of the Affidavit of Merit period, such reliance is misplaced. *Snyder* states that the purpose of the Affidavit of Merit statute "is best implemented . . . by establishing as the beginning point of the 120-day limitations period the date on which a defendant files his answer to the final amended complaint." *Snyder*, 303 F.3d at 276. Third-Party Plaintiffs fail to explicate how their March 29, 2006 cross-claims constitute an amended complaint. The cross-clams are identical to the claims they assert in the

Third-Party Complaint, to which Carlson and Kroll responded on March 6, 2006.  Further, the March 29, 2006 pleading neither adds new claims and allegations against Defendants nor amends the Third-Party Complaint in any way.  Moreover, Third-Party Plaintiffs have not identified any case that stands for the proposition that the running of the Affidavit of Merit period is tolled until Defendants file an answer to cross-claims that merely restate the claims and allegations presented in earlier-filed pleading which Defendants have answered.

Because the Court concludes that the Affidavit of Merit period began to run on March 6, 2006, and DiMinno and Funk did not file their affidavit until September 7, 2006—more than two months after the expiration of the 120-day period—the Court will dismiss Third-Party Plaintiffs' malpractice claim unless one of the exceptions to the Affidavit of Merit requirement applies. DiMinno and Funk do not attempt to meet the "heavy burden" of proving substantial compliance or to demonstrate the existence of extraordinary circumstances.  Thus, the Court must determine only whether the claims are for indemnification or whether the common knowledge exception applies.

Third-Party Plaintiffs correctly point out that the Affidavit of Merit statute, "by its very terms, applies to plaintiffs, not cross-claimants." *Burt v. W. Jersey Health Sys.*, 339 N.J. Super. 296, 771 A.2d 683, 688 (App. Div. 2001).  The Court, however, rejects Third-Party Plaintiffs' argument that their claims against Carlson and Kroll are for indemnification.  Indeed, there is no cross-claimant relationship between DiMinno and Funk on the one hand and Kroll and Carlson on the other hand.  Though Third-Party Plaintiffs rely on the Complaint-in-Intervention and their subsequent cross-claims as a basis for that relationship, the cross-claims are merely restatements of the claims in the Third-Party Complaint, which establishes a plaintiff-defendant relationship.

11

Further, the Third-Party Complaint makes clear that DiMinno and Funk are not merely seeking to pass claims through to Carlson and Kroll.  Instead, the Third-Party Complaint raises new affirmative claims of legal malpractice that none of the other parties, including the Intervenor, has asserted against Carlson or Kroll.  Regardless of whether DiMinno and Funk characterize the relief sought as indemnification, the claims against Defendants are separate and distinct from the claims in the Amended President Container Complaint (and the original President Container Complaint, for that matter).  As such, there is no basis for finding that the indemnification exception relieves DiMinno and Funk of the statutory obligation to file an Affidavit of Merit.

To determine whether the common knowledge exception applies, the Court must look to the substance of the claim and assess whether the malpractice alleged is "a matter within the knowledge of the average citizen or juror."  *See Aster v. Shoreline Behavioral Health*, 346 N.J. Super. 536, 788 A.2d 821, 825 n.4 (App. Div. 2002).  Even assuming that Carlson failed to apprise DiMinno and Funk of the President Container Complaint or consult with them during the drafting of the September 2004 Answer, it is unclear whether they forfeited any rights or suffered any harm.  This is particularly true considering that DiMinno and Funk had the opportunity to—and did—file responsive pleadings to the Amended President Container Complaint, thereby preserving their right to assert claims and defenses.  Therefore, this is not a scenario where "jurors' common knowledge as lay persons is sufficient to enable them, using ordinary understanding and experience, to determine a defendant's negligence without the benefit of the

specialized knowledge of experts." *Estate of Chin*, 160 N.J. at 469.[4]  Morever, the common knowledge exception is unavailable where, as here, the alleged malpractice concerns licensed professionals who were exercising their professional responsibility and judgment.  *See Aster*, 788 A.2d at 825 n.4.  Thus, the Court finds that the common knowledge exception does not apply.

Having determined that Third-Party Plaintiffs did not file an Affidavit of Merit within the 120-day period and that no exceptions to the statutory requirement apply in this case, the Court dismisses with prejudice Third-Party Plaintiffs' claim for legal malpractice against Carlson and Kroll arising out of Carlson's September 2004 Answer to the President Container Complaint.  The Court notes that dismissal under the circumstances presented here is consistent with the policy underlying the Affidavit of Merit.  In the Court's view, Third-Party Plaintiffs' malpractice claim is frivolous particularly because, as explained above, Plaintiffs suffered no harm.  DiMinno and Funk, having secured new counsel, filed answers to the Amended President Container Complaint, thereby preserving their rights.

### 3. Failure to Disclose Prohibited Transactions

In addition to claims relating to the September 2004 Answer, the Third-Party Complaint also alleges that Carlson, Kroll and Lynch Martin committed legal malpractice due to Carlson's alleged failure to disclose his knowledge of prohibited transactions between the Fund and Local I-300.  The crux of this claim is that Carlson (and indirectly Kroll and Lynch Martin), while representing both the Fund and Local I-300—allegedly in violation of Rules of Professional

---

[4] The Court notes that the instant case stands in stark contrast to the *Hubbard* case, which Plaintiffs rely on to support their argument for application of the common knowledge exception.  *Hubbard* involved a dentist who pulled the wrong tooth from the mouth of one of his patients.  That type of plainly obvious malpractice is not present here.

Conduct prohibiting conflicts of interest—, became aware of prohibited transactions between the Fund and Local I-300, but failed to report those transactions to the Fund, or any of its trustees including DiMinno and Funk. In the Court's view, however, this claim is merely Third-Party Plaintiffs' ERISA claim recast as one for legal malpractice.

Even assuming that the claim is properly asserted as one for legal malpractice, the claim fails as against Carlson and Kroll because, as explained above, Third-Party Plaintiffs failed to comply with the Affidavit of Merit Statute. The claim as to Lynch Martin suffers from the same deficiency. Lynch Martin filed its answer to the Third Party Complaint on May 11, 2005—119 days prior to the filing of the Affidavit of Merit on September 7, 2006. Having failed to file the Affidavit within 60 days of Lynch Martin's answer, DiMinno and Funk must demonstrate good cause sufficient to invoke the 60-day extension. *See* N.J. Stat. Ann. 2A:53A-27. Third-Party Plaintiffs point to *Snyder* for the proposition that attorney error can constitute good cause and claim that the failure to file the Affidavit within the 60-day period was due to their attorney's mistaken belief that the time in which to file would not begin until Lynch Martin filed its answer to Third-Party Plaintiffs March 29, 2006 cross-claims.

The Court is not persuaded by this argument. A cursory glance at the Complaint-in-Intervention reveals that there were no claims against Lynch Martin. Clearly then, no cross-claims related to the Complaint-in-Intervention could lie against Lynch Martin. Further, as explained above, the single claim against Kroll was voluntarily dismissed. Thus, even if Plaintiffs' counsel was confused as to the distinctions among Kroll, Carlson and Lynch Martin, it was evident, as of the voluntary dismissal, that there were no intervenor claims—and thus no basis for cross-claims—against any of Defendants. Moreover, Third-Party Plaintiffs have not

14

explained why, if their attorney believed that it was unnecessary to file an Affidavit of Merit, Third-Party Plaintiffs nevertheless filed an Affidavit, at the proverbial eleventh hour.  For these reasons, the Court concludes that Plaintiffs' have not made the proper showing of good cause.

The Court notes that this conclusion does not result in the dismissal of a seemingly meritorious claim on the basis of a technical default.  Even accepting as true Third-Party Plaintiffs allegations—as the Court must under Rule 12(b)(6)—the Court finds that DiMinno and Funk have not pled facts sufficient to support a claim for legal malpractice arising out of Carlson's alleged failure to disclose prohibited transactions.  "The elements of a cause of action for legal malpractice are (1) the existence of an attorney-client relationship creating a duty of care by the defendant attorney, (2) the breach of that duty by the defendant, and (3) proximate causation of the damages claimed by the plaintiff."  *McGrogan v. Till*, 167 N.J. 414, 771 A.2d 1187, 1193 (2001).  Even if, as Third-Party Plaintiffs allege, Carlson was aware of the prohibited transactions and failed to disclose them to DiMinno and Funk, Third-Party Plaintiffs cannot show that Carlson's conduct—rather than the conduct of the actual wrongdoers—was the proximate cause of any losses they allegedly suffered.  Thus, even if DiMinno and Funk had complied with the Affidavit of Merit statute, the Court finds that they have not stated a claim upon which relief can be granted.  *See Alcman Servs. Corp. v. Samuel H. Bullock, P.C.*, 925 F. Supp. 252, 257 (D.N.J. 1996) ("[U]nder the law of legal malpractice, both in New Jersey and elsewhere . . . [a] plaintiff must . . . establish that he suffered damages proximately caused by the lawyer's negligence.").[5]

---

[5] Notably, neither the President Container Complaint nor the Amended President Container Complaint includes claims against Carlson, Kroll or Lynch Martin for any alleged concealment of prohibited transactions on the part of Carlson.  Further, Gordon, whom the

### C. Claim for Breach of Fiduciary Duty under ERISA

Under ERISA, a civil action may be brought "by the Secretary, or by a participant, beneficiary or fiduciary [of a plan] for appropriate relief under section 1109 of this title." 29 U.S.C. § 1132(a)(2). Under Section 1109, fiduciaries are personally liable for breaches of their fiduciary duties. As the Third Circuit has pointed out, attorneys "'performing their usual professional functions will ordinarily not be considered fiduciaries.'" *Painters of Phila. Dist. Council No. 21 Welfare Fund v. Price Waterhouse*, 879 F.2d 1146, 1151 (3d Cir. 1989) (quoting Interpretative Bulletin 75-5, 29 C.F.R. 2509.75.5 (1988)). Notwithstanding that general guidance, ERISA sets forth three scenarios under which an attorney may qualify as a fiduciary:

> [A] person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such a plan.

29 U.S.C. § 1002(21)(A). Third-Party Plaintiffs do not suggest that Carlson rendered investment advice for a fee. Thus, the critical question is whether Carlson's activities were consistent with a normal lawyer-client relationship or whether he exceeded his normal role and assumed discretionary authority concerning plan assets or the administration of the plan. Third-Party Plaintiffs argue that the analysis for determining whether one is a fiduciary under ERISA is extremely fact-sensitive and inappropriate for resolution at the motion to dismiss stage.

---

International Union installed as union representative trustee, did not pursue claims against Carlson, Kroll or Lynch Martin alleging failure to disclose prohibited transactions. Though not dispositive of the whether Third-Party Plaintiffs stated a claim for relief, the fact that all of the other interested parties have neglected to pursue this claim is, at the least, indicative of its lack of merit.

Defendants, while not disputing that the inquiry is fact-sensitive, assert that dismissal of this claim on the pleadings is proper because Third-Party Plaintiffs have not alleged facts that, even if true, are sufficient to state a claim for relief.

Third-Party Plaintiffs' claim that Carlson violated fiduciary duties necessarily requires a showing that Carlson was, in fact, a fiduciary. To that end, the Third-Party Complaint alleges, in part: "At all times relevant, Carlson, the Lynch Firm and the Kroll Firm represented, and were counsel to, the Fund, and were service providers to the Fund. As such, Carlson, the Lynch Firm and the Kroll Firm had fiduciary obligations to the Fund, its beneficiaries, and its other fiduciaries [including DiMinno and Funk] . . . ." (Third Party Compl. ¶¶ 188-89). However, the mere conclusory statement that Carlson was a fiduciary, without the support of factual allegations regarding Carlson's activities and whether he possessed or exercised discretionary control with respect to plan assets or administration, is insufficient to form the basis for Third-Party Plaintiffs' claim.

At oral argument, in apparent recognition that the pleading lacks sufficient facts to support the claim of breach of fiduciary duty, Third-Party Plaintiffs indicated their expectation that discovery would reveal whether Carlson engaged in the type of activities or possessed the requisite discretionary control to render him an ERISA fiduciary. However, a party whose claim is supported by nothing more than bald assertions and legal conclusions cannot survive a motion to dismiss merely by expressing a belief that additional discovery will confirm whether or not a particular claim actually exists. Thus, the Court dismisses with prejudice Plaintiffs' claims for breach of fiduciary duty.

The Court is mindful that, particularly in complex cases, courts frequently hesitate to

dismiss claims under Rule 12(b)(6) in order to give the parties an opportunity to develop the factual bases for their claims.  *See Glassman v. Computevision Corp.*, 90 F.3d 617, 628 (1st Cir. 1996).  Here, however, more than one year has passed since DiMinno and Funk filed their original Third-Party Complaint and, despite having engaged in discovery since early 2006, they have not amended their complaint to include factual allegations that could support a finding that Carlson was a fiduciary.  Moreover, at oral argument, Plaintiffs were unable to articulate any facts suggesting that Carlson engaged in activities or assumed a role sufficient to qualify him as an ERISA fiduciary.  Plaintiffs cannot defeat a motion to dismiss merely by claiming that they need further discovery to develop facts that should have been alleged in their complaint in the first instance.

**CONCLUSION**

For the reasons expressed above, the Court grants (1) the motion to dismiss on behalf of Carlson and Kroll and (2) the motion to dismiss on behalf of Lynch Martin.  Accordingly, the Court dismisses with prejudice all claims in the Third-Party Complaint against Carlson, Kroll, and Lynch Martin.  An appropriate order accompanies this opinion.

/s/ Joel A. Pisano
JOEL A. PISANO, U.S.D.J.

Dated:  February 8, 2007